**Karen CLARK, Lavern Worrell and Jan Woodard, Appellants,**

**v.**

**TEXAS HOME HEALTH, INC., Stephen Abshier, Sidney L. Dauphin and Charlene Dauphin, Appellees.**

No. 07–96–0345–CV.

Court of Appeals of Texas, Amarillo.

March 10, 1997.

Rehearing Overruled April 10, 1997.

Anthony P. Griffin, Inc., Anthony P. Griffin, Cindy A. Meador, Galveston, for appellants.

Small, Craig & Werkenthin, William R. McIlhany, Austin, Orgain, Bell & Tucker, Howard L. Close, Beaumont, Fulbright & Jaworski, Joy M. Soloway, Lawrence H. Clore, Kathleen Weisz Osman, Houston, for appellees.

Before BOYD, C.J., and DODSON and QUINN, JJ.

BOYD, Chief Justice.

In two points, appellants Karen Clark, Lavern Worrell and Jan Woodard assert the trial court erred in rendering two summary judgments, one in favor of corporate appellee Texas Home Health, Inc. (THH) and one in favor of appellees Stephen Abshier, Sidney Dauphin, and Charlene Dauphin (the individual appellees). In their points, appellants argue the trial court erred as a matter of law 1) in dismissing their cause of action "using an improper interpretation of Article 4528, exceptions," and 2) "when it supported the defendants'/appellees' argument that retaliation is not actionable under the relevant statutes." Disagreeing with appellants' theses, we affirm both judgments.

Appellants filed this suit seeking damages for alleged retaliatory acts against them. Initially, and with commendable candor, appellants' counsel conceded upon submission that appellants were not entitled to appellate review of the judgment in favor of the individual appellees. That concession obviates the necessity for our discussion of the summary judgment in their favor. We will, therefore, limit our discussion to appellants' points as they relate to the THH judgment.

THH provides medical care for home bound patients. Appellants are registered nurses who were formerly administrators for THH. They allege they were demoted in their employment with THH on July 29, 1992, for reporting an alleged medication error by two nurse employees of THH.[1] It is for this alleged retaliatory act they seek recovery under Tex.Rev.Civ. Stat. Ann. art. 4525a § 11(a). They also allege they were victims of retaliatory acts because of their participation in "peer review," thereby claiming they are entitled to recover pursuant to Tex.Rev.Civ. Stat. Ann. art. 4525b § 6. Appellants resigned their employment with THH on July 29, 1992.

The summary judgment evidence shows that on April 30, 1992, Cynthia Schaaf, a staff nurse, needed to draw blood from a home bound THH patient. Nurse Schaaf was aware that Ursula Shaw, a THH licensed vocational nurse, was also scheduled to visit the patient on that same day for the purpose of administering an insulin injection. Although Schaaf says she attempted to reach Shaw personally to advise her not to administer the insulin injection, she was not able to do so and left a message on an answering machine. Nurse Schaaf went by the home of the patient early the next morning, drew some blood, checked the patient's vital signs, gave her an insulin injection and left. Shaw apparently never received the message, went by the patient's home and gave her another insulin injection. Soon after she did so, the patient told her that she had received the earlier injection.

Shaw did not report the second injection to anyone at THH and did not take any corrective action to prevent the negative impact of insulin overdose. The patient lapsed into a coma and died three days later. As a result of these events, Shaw's employment with THH was terminated on May 1, 1992.

On June 18, 1992, the THH Peer Review Committee (the Committee)[2] convened to discuss the death and what additional corrective measures, if any, needed to be taken. Subsequent to that meeting, appellant Karen Clark wrote Shaw that the Committee had a responsibility to report the matter to the Texas Board of Vocational Nurse Examiners (the Board), and Shaw had ten days within which to provide a rebuttal to the allegations. Thereafter, appellee Stephen Abshier was added to the Committee.

On July 17, 1992, the Committee had a second meeting at which Shaw appeared with her attorney. At the conclusion of the meeting, Abshier informed Shaw's attorney that the Committee would take no further action until they received a written rebuttal statement from Shaw. THH and the individual appellees had been advised by their legal counsel that no report should be made to the Board before Shaw's attorney had adequate time within which to make a rebuttal. By deposition, appellee Sidney Dauphin admit-

---

1. One of the nurses was a registered nurse, the other was a licensed vocational nurse.

2. The Committee initially consisted of appellants Karen Clark, Lavern Worrell and Jan Woodard, in addition to Rae Horton and Janice Moulder, both of whom are registered nurses.

ted that after "all of us had heard legal advice over a speaker phone in my office from my corporate attorney," he told appellants that if they lost their licenses over their failure to report Shaw, he would guarantee their salaries for ten years.

Appellants had another meeting on July 29, 1992, with the individual appellees.[3] At that meeting, appellants informed the individual appellees that they disagreed with the legal advice given to appellees, and they had decided to report the matter to the Board without waiting for the written rebuttal. As a result, appellants were removed from the peer review committee and relieved of their administrative duties. In his deposition excerpt, Sidney Dauphin acknowledged that appellants resigned because they had been relieved of their administrative duties.

By deposition excerpt and by affidavit, appellant Karen Clark averred that appellants submitted a report to the Board on or about July 31, 1992. By affidavit, appellants Lavern Worrell and Jan Woodard also said such a report was mailed to the Board. However, by affidavit dated March 13, 1993, which was subsequent to the October 8, 1992 filing of this suit, Marjorie A. Bronk, the executive director of the Board of Vocational Nurse Examiners, averred that as of that date the Board had not received "any report, complaint or document filed by Karen Clark, Lavern Worrell, Jan Woodard, or Phyllis Galatas that pertains to Ursula A. Shaw."

Appellants have admitted that no report was filed with the Board prior to July 30, 1992. In their response to THH's motion for summary judgment, appellants commented that "[T]his report (the July 31 report) was mailed and not received by the Board, and another copy of the report was mailed at a later date." Attached to a supplemental response is a copy of a July 31, 1992 letter to the Board and a report about Shaw, signed by appellants. While the copy does not show a Board file mark, there is included with the letter a copy of a post office return receipt to be returned by the Board. In a box marked "Addressee's Address (only if requested a fee paid)" appears a notation, apparently handwritten, which reads "Received (8–4–92) Al Clark." However, there is no identification of Clark or explanation of his connection with the Board, if such a connection existed.

Parenthetically, by affidavit, Sydney Dauphin, CEO of THH, averred that THH filed a report with the Board on October 23, 1992. It was as a result of that report, appellees posit, that Shaw was disciplined by the Board.

## STANDARD OF REVIEW

A summary judgment is only proper when a movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); Tex.R. Civ. P. 166a(c). In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true and every reasonable inference resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant is entitled to summary judgment if it can establish as a matter of law that there is no genuine issue of material fact about one or more of the essential elements of the plaintiff's cause of action or if it can establish all the elements of an affirmative defense as a matter of law. *Randall's Food Markets,* 891 S.W.2d at 644. Where, as here, the trial court's order granting summary judgment does not specify the ground or grounds relied upon, the judgment is to be affirmed if any of the theories advanced by the movant are meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996); *State Farm Fire & Cas. Co. v. S.S. & G.W.,* 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

Parenthetically, THH contends appellants' two points are "legally insufficient to present reversible error." However, a point is "sufficient if it directs the attention of the appellate court to the error about which complaint

---

**3.** Sidney Dauphin was the CEO of THH, and Charlene Dauphin and Steve Abshier were vice-presidents.

is made." Tex.R.App. P. 74(d). These points are sufficient to show appellants' challenge to the validity of the summary judgment and, because of the liberal construction the courts historically have given appellate briefs in appeals from summary judgments, we will consider and discuss their arguments. *See Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 765–66 (Tex.App.—Fort Worth 1994, writ denied).

We agree with THH's challenge to the *per se* inclusion of Article 4528[4] in appellants' first point inasmuch as that article was not included as a basis of THH's motion for summary judgment, nor was it included in appellants' live pleadings seeking recovery. However, in support of its summary judgment motion, THH did argue that the portion of Article 4528 providing that "this law (pertaining to registered nurses) shall not be construed to apply to ... (4) Licensed Vocational Nurses ..." was an example of how the legislature has differentiated between registered and vocational nurses. Appellants' reference to Article 4528 will only be considered by us in weighing the validity of that argument.

In their suit, appellants alleged two statutory causes of action. They first alleged a violation of Article 4525a, section 11(a), which creates a cause of action against an organization that disciplines or discriminates against the person for reporting under this article. Secondly, they alleged a violation of Article 4525b, section 6, which prohibits retaliation against peer review participants.[5]

In its motion for summary judgment, THH mounted a two prong argument. The thrust of its first prong argument was that appellants could not maintain an action under Article 4525a, section 11(a) because they could not show they were demoted as a result of filing a report with the Board, as no such report was filed with the Board prior to their demotion. Thus, it concluded, as a matter of law, appellants could not establish a causal connection between a report under Article 4525a and their alleged demotion.

The gist of its second prong argument is that appellants could not maintain a suit under Article 4525b, section 6 because consideration of a licensed vocational nurse is not "peer review" as defined in the statute.

Article 4525a, section 11(a), unchanged since the events in this case, creates a "whistleblower" type of action and, in relevant part, provides:

No person shall suspend, terminate, or otherwise discipline or discriminate against a person reporting, without malice, under this article. A person has a cause of action against an individual, organization, agency, facility, or other person that suspends or terminates the employment of the person or otherwise disciplines or discriminates against the person for reporting under this article.

\* \* \* \* \* \*

Tex.Rev.Civ. Stat. Ann. art. 4525a, § 11(a) (Vernon Supp. Pamph.1997).

At the time of the events in question, Article 4525b, section 6 provided:

A professional nursing peer review committee, a person participating in peer review, or an organization, named as a defendant in any civil action or subjected to other retaliatory action as a result of participation in peer review, may file a counterclaim in any pending action or may prove a cause of action in a subsequent suit to recover any defense costs, including court costs, reasonable attorney's fees, and actual and punitive damages if the suit or retaliatory action is determined to be frivolous, unreasonable, without foundation, or taken in bad faith.

Acts 1995, 74th Leg., R.S., ch. 606, § 10.

As it existed in 1992, Article 4525a contained six mandatory provisions and one permissive reporting provision. The mandatory reporting requirements were contained in sections 1–6 and, in general terms, required

---

4. Tex.Rev.Civ. Stat. Ann. art. 4528 (Vernon Supp. Pamph.1997).

5. The causes of action asserted by appellants were based upon events that occurred in 1992. The statutes upon which appellants rely were amended in 1993 and 1995. *See* Tex.Rev.Civ. Stat. Ann. art. 4525a (Vernon Supp. Pamph. 1997). The statutes discussed by us are those applicable at the time of the events in question.

registered nurses and various types of entities to report registered nurses to the Board of Nurse Examiners, the state agency that licenses registered nurses, if it appeared such a nurse had engaged in unprofessional conduct, failed to care adequately for a patient, failed to conform to the minimum standards of acceptable professional nursing practice, or if the nurse's practice was or was likely to be impaired because of chemical dependency. The permissive reporting section was section 7 and, because Shaw was a licensed vocational nurse, is the section applicable here. Under that section, a registered nurse could report other health practitioners to licensing boards for possible disciplinary action.

Section 7, unchanged since these events, provides:

A registered nurse may *file* a *signed, written* report to the appropriate licensing board[6] to report a licensed health care practitioner, agency, or facility that the nurse has reasonable cause to believe has exposed a patient to substantial risk of harm as a result of failing to provide patient care that conforms to the minimum standards of acceptable and prevailing professional practice.

Tex.Rev.Civ. Stat. Ann. art. 4525a, § 7 (Vernon Supp. Pamph.1997) (emphasis added).

Thus, by its terms, a report under section 7 must:

1. be signed;
2. be in writing; and
3. be filed with the appropriate licensing board.

### Article 4525a, Section 11(a)

■ Cited legislative history of Article 4525a not disputed by appellants reveals that the article originated in Senate Committee Substitute Bill No. 1160 (S.C.S.B.1160) in the 70th Regular Session of the Texas Legislature. The bill analysis for that bill states it was intended to improve the enforcement of the Nurse Practice Act and, in order to do so, *inter alia,* provide for protection from retaliation for making such reports. The analysis of section 1(b) sets out the procedures required by the act, including the requirement that proceedings are begun "by filing a written complaint with the board" in addition to allowing the board to file complaints on its own initiative.

The requirement that a report be "filed" with the board is also a clear indication that any report must be in writing. While the Act itself does not define when an instrument is "filed" within its purview, there are decisions of our supreme court which are instructive in determining that question. In *Jamar v. Patterson,* 868 S.W.2d 318 (Tex.1993), the court had occasion to consider the question of what constitutes "filing" a motion for new trial for the purposes of calculating the appellate timetable. Although the questions before the *Jamar* court and those before us are different, the reasoning employed by that court in construing the term "filing" is applicable here.

In *Jamar,* the court commented that the lack of a file mark on the motion was not fatal, observed that the motion had been directly tendered to the clerk, and noted that "[i]n a long line of cases, this court has held that a document is 'filed' when it is tendered to the clerk, or otherwise put under the custody or control of the clerk." *Id.* at 319.[7] Applying that reasoning to our facts, it would appear that a report would be "filed" within the purview of Article 4525 when it was tendered to the Board or otherwise put under the custody or control of the Board.

6. As Shaw was a licensed vocational nurse, in this case, the "appropriate licensing board" would be the Texas Board of Vocational Nurse Examiners.

7. We note that issue in *Jamar* was again addressed by the supreme court in *Tate v. E.I. DuPont de Nemours & Co.,* 934 S.W.2d 83 (Tex. 1996). In *Tate,* the court held that when a motion for new trial is timely presented to the district clerk without the filing fee, and the filing fee is paid after the motion for new trial is overruled but before the trial court loses plenary jurisdiction, the appellate timetable is extended. *Id.* at 84. The court also expressed no opinion about whether a motion for new trial extends the appellate timetable if the filing fee is not paid within the period of the trial court's plenary jurisdiction. *Id.* at 84, n. 1. These issues are not before us in the instant case.

For the purposes of our discussion, and viewed in the light in which we must view it in this summary judgment appeal, we will assume that the copy of the letter report and the copy of the return receipt, even in the face of the record keeper's affidavit, is sufficient to raise a fact question whether appellants filed a written complaint with the Board.

THH hypothesizes that there are three necessary elements to establish liability under Article 4525a, section 11(a). First, the employee must have been subjected to suspension, termination, discipline or discrimination. THH acknowledges that this element was not addressed in its motion for summary judgment and accordingly is not before this court. The second element, it posits, is that the suspension, termination, discipline or discrimination must have been for reporting under Article 4525a. The third element is that the report must be filed with the appropriate licensing board. THH concludes that as a matter of law, appellants cannot establish "the causal connection between a report and retaliation" because no written report was filed with the Board before appellants' demotion.

In response to THH's position, appellants argue that "[i]t makes no sense to argue that employers can skirt around the liability created in this article if they take action against an employee after it is learned that the employee is going to make such a report, but before an employee has the chance to actually make the required report."

In advancing its theory, THH primarily relies upon *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex.1995). Because of that emphasis, we will consider the case in some detail. In *City of Beaumont*, the court had occasion to consider the Texas Whistleblower Act[8] and, in beginning its discussion, stated the initial question presented to the court was "[w]hat constitutes a report 'to an appropriate law enforcement authority' sufficient

to fall within the protection of the Texas Whistleblower Act." *Id.* at 144.

In that case, the plaintiffs, who were police officers, believed the City had violated a provision of the City Charter of Beaumont. In pursuance of that belief, they issued a press release and held a press conference. *Id.* In response to the concerns expressed in the release, the city manager scheduled a meeting with members of the police force to discuss day-to-day operations of the police department. On the date one such meeting was scheduled, the officers arrived at the meeting with an attorney and a court reporter to transcribe the proceedings. The city manager refused to discuss the internal operations with the attorney present, but offered to meet later with the plaintiffs and their attorney to discuss their grievances. Concluding such actions "completely lack[ed] judgment and management sense," two days later the city manager issued written reprimands to the officers for inviting the attorney and the court reporter to an executive staff meeting to discuss matters not on the agenda. *Id.* at 145. Subsequently, the City instituted department-wide reforms which affected the whole department, including the officers in question. Eventually, all but one of the officers took early retirement and the remaining officer left after suit was filed. The officers filed suit for constructive discharge alleging that because they had disclosed a violation of the City Charter, the City retaliated against them by instituting the reorganization violating, *inter alia*, their rights under the Texas Whistleblower Act. *Id.*

At the time, and in pertinent part, the Whistleblower Act provided:

A state or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

8. At the time of the opinion, the Whistleblower Act was set out in Tex.Rev.Civ. Stat. Ann. art. 6252–16a, § 2. It has since been recodified and amended and is set out in Tex. Gov't Code Ann. § 554.002 (Vernon Supp.1997). The only substantive change in the present act is that the

statute now defines "appropriate law enforcement authority" as the governmental entity that the employee in good faith believes is authorized to regulate or enforce the law or to investigate and prosecute a violation of the law.

*City of Beaumont,* 896 S.W.2d at 145, *citing* Tex.Rev.Civ. Stat. Ann. art. 6252–16a, § 2 (Vernon 1983).

The trial jury returned a verdict in favor of the plaintiff-police officers and the court of appeals affirmed a judgment in their favor. However, the supreme court reversed that decision. *En route* to its decision, the supreme court explicated that "[t]o demonstrate a violation of the Whistleblower Act, a plaintiff must, among other things, prove that the plaintiff reported a violation of law to an appropriate law enforcement authority," and went on to say that "[o]ur disposition of the whistleblower issue focuses exclusively on this element of the Act." *Id.* at 145. The court concluded that no "report" within the purview of the Act had been filed, but commented that had the officers reported an illegal act to the city manager and, had they proved there was in fact a suspension, discharge or discrimination caused by their report, the Whistleblower Act would have provided the officers with an adequate remedy. *Id.* at 146.

By necessary inference, the teaching of the case is, at least with regard to the Texas Whistleblower Act, that the Act is strictly interpreted, and a report prior to the alleged disciplinary act must actually be made to trigger the protection of the statute. Because of the similarity of the Texas Whistleblower Act and the act being considered by us, the supreme court's reasoning is very persuasive and leads us to conclude that the section 11(a) whistleblower provision should also be strictly construed.

It is also the established rule that if a statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate and the statute should be given its plain meaning. *Cail v. Service Motors Inc.,* 660 S.W.2d 814, 815 (Tex.1983); *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974); *Sims v. Adoption Alliance,* 922 S.W.2d 213, 215 (Tex.App.—San Antonio 1996, writ denied).

By its terms, section 11(a) is triggered by the making of a report. As we have noted, section 7 requires that the report be signed, in writing, and filed. In order to be entitled to a section 11(a) cause of action, the prohib-

ited action must have been taken against the person for "reporting . . . under this article." Thus, by necessary implication, the written report must have been filed prior to the retaliatory action. Even considering that appellants' affidavits and the somewhat cryptic copy of the return receipt are sufficient to raise a fact question whether the requisite written report was filed with the board, it is undisputed that no such report was filed prior to the alleged retaliatory action.

There are several policy considerations which may have impelled the legislature to require a written report directly to the Board without notice of intent to an employer. A written report gives the Board a specific statement of facts upon which to begin an investigation as well as a basis for taking whatever steps are required for the proper investigation and disposition of the complaint. It also furnishes a definite reference point to determine if the complainant is entitled to whistleblower protections under the Act. Additionally, there is no need for discussions with the employer because, under the statute, the employer has no role in the reporting process, a decision apparently deliberately made by the legislature to ensure no impediment to the reporting process is created by an employer.

In any event, we think the trial court correctly concluded that appellants could not, as a matter of law, establish they had filed with the Board a written report prior to their demotion. That being so, appellants could not establish an essential element of their section 11(a) cause of action.

■ We next consider appellants' argument that they were entitled to maintain an action by virtue of article 4525b, section 6. Reiterated, in pertinent part, that section states:

> [A] person participating in peer review . . . subjected to . . . retaliatory action as a result of participation in peer review, may file a counterclaim in any pending action or may prove a cause of action in a subsequent suit to recover any defense costs, including court costs, reasonable attorney's fees, and actual and punitive damages if the suit or retaliatory action is determined

to be frivolous, unreasonable, without foundation, or taken in bad faith.

Tex.Rev.Civ. Stat. Ann. art. 4525b, § 6 (Vernon Supp. Pamph.1997).

In 1992, article 4525b § 1(2) defined "peer review" as:

(2) "Peer Review" means the evaluation of professional nursing services, the qualifications of professional nurses, the quality of patient care rendered by professional nurses, the merits of complaints concerning. professional nurses and professional nursing care, and determinations or recommendations regarding complaints, including:

(A) the accuracy of nursing assessments and observations;

(B) appropriateness and quality of the care rendered by a professional nurse;

(C) reports made to a professional nursing peer review committee concerning activities under the committee's review authority;

(D) reports by a professional nursing peer review committee to other committees or to the board as permitted or required by law; and

(E) implementation of the duties of a professional nursing peer review committee by its members, agents, or employees.

Acts 1995, 74th Leg., R.S. ch. 606, § 3.

The "Nurse Practice Act" which governs the activities of nurses in Texas, is contained in Articles 4513 through 4528c. Article 4513 provides for the creation of a Board of Nurse Examiners to regulate registered nurses. In 1992, Article 4518(1) provided, *inter alia,* "[i]t shall be the duty of the Board of Nurse Examiners to prescribe and publish the minimum requirements and standards for a course of study in programs which prepare *professional nurse practitioners.*" Acts 1993, 73rd Leg., R.S., ch. 436, § 5 (emphasis added).

Article 4518, section 3 said:

Every applicant for registration under this law shall present to the Board of Nurse Examiners evidence of successful completion of an accredited program of *professional nursing* education ... and shall ... be entitled to take the examination prescribed by the board. Upon making a passing grade, the applicant shall ... receive ... a certificate ... entitling such person to practice as a *registered nurse.*

Acts 1993, 73rd Leg., R.S., ch. 436, § 5 (emphasis added).

Article 4518, section 4 stated:

Any person practicing or offering to practice *professional nursing* in this state for compensation, shall hereafter be required to submit evidence to the Board of Nurse Examiners that he or she is qualified to practice and shall be *registered* as provided by this law. (emphasis added).

Acts 1993, 73rd Leg., R.S., ch. 436, § 5 (emphasis added).

In pertinent part, article 4528 provided then and now that:

This law shall not be construed to apply to:

(4) Licensed Vocational Nurses.

Tex.Rev.Civ. Stat. Ann. art. 4528 (Vernon Supp. Pamph.1997).

The reference to "this law" contained in article 4528, section 4 can only refer to the preceding sections (articles 4513–4528), because article 4528c, the next ensuing article, is headed "Licensed Vocational Nurses" and specifically deals with licensed vocational nurses.

Article 4525b was also enacted by virtue of S.C.S.B. 1160. The cited and uncontested legislative history of that bill shows the paragraph describing the purpose of the bill with reference to "peer review" as follows:

[The bill] ... establishes peer review for *registered nurses.*

Page 1, Bill Analysis of S.C.S.B. 1160 (emphasis added).

It is also helpful in determining whether Licensed Vocational Nurses were within the purview of article 4525b at the time in question to note that paragraphs 1 and 2 of section one were amended, and paragraphs 3 and 4 of section one were added effective August 28, 1995 by H.B. 883, Acts 1995, 74th Leg., ch. 606, § 3. Those paragraphs now read:

(2) "Peer review" means the evaluation of nursing services, the qualifications of nurs-

es, the quality of patient care rendered by nurses, the merits of complaints concerning nurses and nursing care, and determinations or recommendations regarding complaints, including:

(A) the accuracy of nursing assessments and observations;

(B) appropriateness and quality of the care rendered by a nurse;

(C) reports made to a nursing peer review committee concerning activities under the committee's review authority; and

(D) reports by a nursing peer review committee to other committees or to the board as permitted or required by law; and

(E) implementation of the duties of a nursing peer review committee by its members, agents, or employees.

(3) "Nurse" means a registered nurse or a licensed vocational nurse.

(4) "Nursing" means professional nursing or vocational nursing.

Tex.Rev.Civ. Stat. Ann. art. 4525b, § 1 (Vernon Supp. Pamph.1997).

By these amendments, the legislature deleted from the definition of "peer review" all references to "professional nurse" and "professional nursing" and substituted the terms "nurses" and "nursing." By the addition of section 3, "nurse" was defined as a "registered nurse or a licensed vocational nurse." By the addition of section 4, the term "nursing" was defined as meaning "professional nursing or vocational nursing." That change in the definition of "nursing" indicates a distinction between nursing as performed by a registered nurse, and nursing as performed by a licensed vocational nurse that was not present when the events in question occurred.

Also effective August 28, 1995, House Bill 883 added § 10I to article 4528c. That section specifically provides:

A vocational nurse licensed under this Act is subject to peer review under Article 4525b, Revised Statutes.

Tex.Rev.Civ. Stat. Ann. art. 4528c, § 10I (Vernon Supp. Pamph.1997).

It is a well established rule of statutory construction that when the legislature enacts an amendment, it intends to change the original act by creating a new right or withdrawing an old one. *American Surety Co. v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715, 719 (1931); *Durish v. Channelview Bank,* 809 S.W.2d 273, 277 (Tex.App.—Austin 1991, writ denied); *Friedrich Air Conditioning & Refrigeration Co. v. Bexar Appraisal Dist.,* 762 S.W.2d 763, 767 (Tex.App.—San Antonio 1988, no writ).

The wording of the statute at the time in question and the rather extensive amendments the legislature apparently thought were necessary to encompass licensed vocational nurses within the statute convince us that appellants were not within the purview of the right of action granted under Article 4525b, section 6. Thus, at the time of the events giving rise to this lawsuit, the term "peer review" did not include the evaluation of a licensed vocational nurse, and appellants were not entitled to maintain an Article 4525b action.

In summary, both of appellants' points are overruled and the judgment of the trial court affirmed.