**EMPLOYERS CASUALTY COMPANY, Appellant,**

**v.**

**Carl L. DYESS, Jr., Northbrook Property and Casualty Insurance Company and Northbrook Indemnity Company and Felipe Mendoza, Appellees.**

**No. 07–96–0365–CV.**

Court of Appeals of Texas, Amarillo.

Nov. 7, 1997.

Hughes, Watters & Askanase, Loren R. Smith, Houston, for appellant.

Daniel B. Nelson & Associates, Daniel B. Nelson, Thomas B. "Tody" DuPont, Houston, for appellees.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

In this case, we are asked to address the subrogation rights of a workers' compensation carrier as they might apply to the employer's uninsured motorist, coverage. Appellant, Employers Casualty Co. (Employers), challenges the granting of summary judgment in favor of appellees Carl L. Dyess, Jr. (Dyess), Northbrook Property and Casualty Co., Northbrook Indemnity Co. (collectively referred to as Northbrook), and Felipe Mendoza (Mendoza) denying Employers' subrogation claims. For reasons we later discuss, we reverse the judgment of the trial court.

A proper discussion of the question before us requires us to discuss in some detail the factual and procedural history of the proceeding. In 1990, appellee Dyess was an employee of Winn–Lange Electric, Inc. Employers was the workers' compensation carrier for Winn–Lange. Winn–Lange's automobile insurance policy, which included uninsured motorist coverage, was with Northbrook. On August 14, 1990, Dyess was driving a truck belonging to Winn–Lange in the course of his employment when he was struck by a vehicle operated by Mendoza. Mendoza was uninsured. Dyess sought and obtained workers' compensation benefits totaling $107,385.40 from Employers.

Some time before August 1991, Dyess brought a negligence suit against Mendoza. Employers filed a plea in intervention in February 1992, asserting its subrogation rights under Tex.Rev.Civ. Stat. Ann. Art. 8307, § 6a (repealed by Acts of December 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex.Gen.Laws 1, 114, effective January 1, 1991). In its plea, Employers named Mendoza's employer, Toni Martin, as an additional defendant, asserting that Mendoza was acting in the course and scope of his employment at the time of the collision. Dyess then added Northbrook as a defendant seeking to recover under the uninsured motorist coverage of Winn–Lange's automobile insurance policy with Northbrook. On May 11, 1992, the trial court rendered a no-answer default judgment against Mendoza on the issue of liability. Employers then amended its plea in intervention asserting a right of subrogation for any recovery Dyess might obtain from Northbrook. Northbrook answered, asserting it was entitled to an offset for any workers' compensation payments made to Dyess and specially excepted to Employers' plea in intervention. Northbrook also brought cross-claims against Mendoza and Martin.

On February 12, 1993, Northbrook moved for summary judgment against Employers on the basis that Employers lacked any subrogation right against Northbrook. On March 1, 1993, Dyess filed his own motion for summary judgment against Employers, asserting the same grounds urged by Northbrook. Both motions relied on a provision of the insurance contract which provided that uninsured motorist coverage "shall not apply directly or indirectly to benefit [ ] any insurer or selfinsurer under any workers' compensation, disability benefits or similar law." The movants also relied on *Bogart v. Twin City Fire Ins. Co.*, 473 F.2d 619 (5th Cir.1973), for the proposition that workers' compensation carrier's subrogation rights do not extend to uninsured motorist coverage. The trial court granted Northbrook's motion on March 30, 1993, and Dyess's motion the following September. The trial court also granted another motion for summary judgment by Dyess that Northbrook was not entitled to an offset for the payments made by Employers to Dyess.

After the trial court granted these motions, Dyess and Northbrook settled for $150,000, prompting Dyess's dismissal of his claims against Northbrook. Employers objected to the dismissal because the settlement agreement did not reflect its subrogation rights. The parties stipulated to the amount of workers' compensation benefits

Employers had paid to Dyess and the action proceeded to trial on July 10, 1995. At the conclusion of the trial, the jury found Mendoza was solely responsible for the accident, but that he was not acting in the course and scope of his employment with Martin and found Dyess's damages were $400 for medical care. In its judgment, the trial court denied Employers' request for subrogation, and ordered that Dyess recover $400 from Mendoza but take nothing from Martin. It also taxed costs against Dyess and Employers.

In this appeal, Employers presents five points of asserted error. In its first three points, it claims the summary judgments were erroneous because they violate Employers' 1) statutory right of subrogation, 2) its contractual subrogation right, and 3) its equitable subrogation right. In its fourth point, Employers challenges the trial court's failure to award it recovery of the amount for which the jury found Mendoza liable to Dyess. In its fifth point, it assigns error to the trial court's refusal to charge the court costs to Mendoza.

## STANDARD OF REVIEW

A summary judgment is only proper when a movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); Tex.R. Civ. P. 166a(c). In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true and every reasonable inference resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Where, as here, the trial court's order granting summary judgment does not specify the ground or grounds relied upon, the judgment is to be affirmed if any of the theories advanced by the movant are meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996); *State Farm Fire & Cas. Co. v. S.S. & G.W.,* 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Parenthetically, we have not failed to note the changes made in the summary judgment practice by the rather extensive amendments to the Rules of Civil Procedure effective September 1, 1997.

However, not only was this appeal perfected prior to the effective date of those changes, with regard to the questions before us, the summary judgment requirements would be the same.

Subrogation has been defined as the right of one who has paid an obligation which another should have paid to be indemnified by the other. BLACK'S LAW DICTIONARY, 1427 (6th ed.1990). The legislature first provided for a workers' compensation carrier's subrogation rights in 1917. Act of March 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex. Gen. Laws 268, 285. As initially written, and in relevant part, the subrogation statute provided:

Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employee or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employee....

*Id.* Under this language, our courts held that an employee's action against a third party tortfeasor precluded subsequent recovery of workers' compensation benefits, but receipt of workers' compensation payments would not necessarily prevent the employee's subsequent action against the third party tortfeasor. *Hart v. Traders & General Ins. Co.,* 144 Tex. 146, 189 S.W.2d 493, 494 (1945) (citing *Employers' Indemnity Corp. v. Felter,* 277 S.W. 376 (Tex.Com.App.1925)). The court subsequently held that an injured employee has standing to pursue a third-party claim after obtaining a compensation award whether or not the compensation carrier refuses to do so. *Watson v. Glens Falls Ins. Co.,* 505 S.W.2d 793, 796 (Tex.1974).

In *Campbell v. Sonford Chem. Co.,* 486 S.W.2d 932 (Tex.1972), the court noted a circumstance in which this statute would

leave an injured employee with no remedy. This would occur when the employee sought compensation benefits, but the claim was denied more than two years after his cause of action accrued. In that event, the employee's claim against the third party would be barred by limitations. If the employee filed suit before the running of limitations, section 6a would preclude recovery of compensation benefits. *Id.* at 934. In 1973, and in apparent response to *Campbell,* the legislature amended the subrogation statute [1] to provide that an employee's action against a third party would not preclude recovery of workers' compensation benefits. The statute in effect at the time of Dyess's injury provided:

> If the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employee may proceed either at law against that person to recover damages or against the association for compensation under this law, and if he proceeds at law against the person other than the subscriber, then he shall not be held to have waived his rights to compensation under this law. [ ] If compensation be claimed under this law by the injured employee or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employee, and may enforce in the name of the injured employee or of his legal beneficiaries the liability of said other person, and in case the recovery is for a sum greater than that paid or assumed by the association to the employee or his legal beneficiaries, then out of the sum so recovered the association shall reimburse itself and pay said costs and the excess so recovered shall be paid to the injured employee or his beneficiaries. [ ]

Repealed and recodified as Tex. Labor Code Ann. § 417.001, by Act of December 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(10), 1989 Tex. Gen. Laws 1, 114, effective January 1, 1991.[2]

From this history, it appears clear that the 1973 amendment changed the law applicable when an injured employee seeks compensation benefits after bringing an action against a third party. However, that is not the issue presented by this case. The question before us is the subrogation right of a workers' compensation carrier after it paid benefits to an injured employee who subsequently brought suit against potentially liable third parties. Our courts have recognized an injured employee's ability to bring such suits, at least as to third party tortfeasors, since 1925. *See Employers' Indemnity Corp., supra.*

In considering the effect of a compensation carrier's right of subrogation on an injured employee's claim against others, our courts have used a variety of descriptions. Most have held that after compensation benefits have been paid, the employee has a cause of action against the third party, but it is subject to, or burdened by, the workers' compensation carrier's right of reimbursement. *See, e.g., Guillot v. Hix,* 838 S.W.2d 230, 232 (Tex.1992); *Traders & General Ins. Co. v. West Texas Utilities,* 140 Tex. 57, 165 S.W.2d 713, 716 (1942); *Travelers Ins. v. Seidel,* 705 S.W.2d 278 (Tex.App.—San Antonio 1986, writ dism's w.o.j.). In *Fort Worth Lloyds v. Haygood,* 151 Tex. 149, 246 S.W.2d 865 (1952), our supreme court held that an injured employee has no cause of action against a third party except to the degree his damages exceed the workers' compensation recovery. *Id.* 246 S.W.2d at 868, 869. In

1. Act of May 10, 1973, 63rd Leg. R.S., ch. 88, § 10, 1973 Tex. Gen. Laws 187, 193 (repealed 1989).

2. Currently the subrogation statute is codified as Sections 417.001 and .002 of the Labor Code. Section 417.001 provides:
(a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. [ ] Section 417.002 provides:
(a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

*Yeary v. Hinojosa,* 307 S.W.2d 325 (Tex.Civ. App.—Houston 1957, writ ref'd n.r.e.), the court held that the cause of action against the third party was "in effect" owned jointly by the employee and the compensation carrier. *Id.* at 331. In *Capitol Aggregates, Inc. v. Great Am. Ins. Co.,* 408 S.W.2d 922 (Tex. 1966), the court reaffirmed a workers' compensation carrier's right to the first money recovered by the employee from a third person for the injuries for which the compensation was paid. *Id.* at 923. *See also Autry v. Dearman,* 933 S.W.2d 182, 188 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

When an injured employee, or their representative, has attempted to enter into a settlement agreement with the third party, without providing for reimbursement of the workers' compensation carrier, our courts have declared such agreements unlawful as contrary to the purpose of the subrogation statute. *See Travelers Ins. v. Seidel,* 705 S.W.2d at 281; *Capitol Aggregates,* 408 S.W.2d at 924. In *Capitol Aggregates,* the court went on to hold that Section 6a of Article 8307 was adopted to prevent overcompensation to the employee and to reduce the burden of insurance to the employer and to the public which purposes would be frustrated if the employee were permitted to retain both the compensation benefits and the settlement proceeds. *Id.* at 922 (citing *Consolidated Underwriters v. Kirby Lumber Co.,* 267 S.W. 703 (Tex. Comm'n App.1924)).

Subsection c of section 6a provides that an employee's recovery from a third person shall be applied to reimburse the compensation carrier. *See e.g., Travelers Ins. v. Seidel,* 705 S.W.2d at 281 (carrier entitled to recover from employee's heir); *Home Indemnity Co. v. Thompson,* 407 S.W.2d 530 (Tex.Civ.App.—Texarkana 1966, no writ). This is so even when the carrier did not participate in the employee's suit against the third party. *Houston Gas & Fuel v. Perry,* 127 Tex. 102, 91 S.W.2d 1052 (1936). On at least one occasion, an appellate court held that a workers' compensation carrier could recover payments from a third party tortfeasor even though the payment had been made before any workers' compensation payments had been made. *See Home Indemnity Co.,* 407 S.W.2d at 530.

As we have noted, both motions for summary judgment contained the same two grounds: first, that Northbrook's contractual liability expressly precluded recovery by a workers' compensation carrier, and second, that the statutory right of subrogation was inapplicable to uninsured motorist coverage. Thus, the motions did not involve any equitable right of subrogation that might be possessed by Employers. Therefore, if such a right exists, the summary judgments were improper. For this reason, we initially address Employers' third point.

Employers cites *American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480 (Tex. 1992), and *Ortiz v. Great Southern Fire & Cas. Ins. Co.,* 597 S.W.2d 342 (Tex.1980), as support for its position that it has an equitable right of subrogation. However, neither case concerned the subrogation rights of a workers' compensation carrier. In *American,* the court was presented with the question of an excess liability carrier's equitable subrogation rights against a primary insurer. The court held that an excess carrier liable for claims is subrogated to the rights of the insured as against the primary insurer. *American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d at 482. *See G.A. Stowers Furniture Co. v. American Indemnity Co.,* 15 S.W.2d 544 (Tex.Com.App.1929) (recognizing insurer's duty to insured in settlement of claims). In doing so, the court reasoned that without such a remedy, the primary insurer would have little incentive to settle within the primary policy's limits. *American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d at 483.

*Ortiz* involved the intervention of a homeowner's insurance carrier in an action by the homeowner against a third party tortfeasor responsible for a fire. It was undisputed that the homeowner had suffered $15,000 in damages to the home and its contents as a result of the fire. Because the policy did not cover the home's contents, the insurance company paid only $4,000 for damage to the structure. The insured settled with the third party for $10,000. The trial court granted summary judgment in favor of the insurance company for $4,000 and was affirmed by the court of appeals. When appealed to the su-

preme court, with the observation that "the right of equitable subrogation is granted to an insurer [is] to prevent the insured from receiving a double recovery," that court recognized the existence of an equitable right of subrogation. However, even so, the supreme court held summary judgment should not have been granted in favor of the insurance company because the record did not show "if any portion of the $10,000 settlement was intended as compensation for damage to the insured real property in that particular case" thus, "there is no indication that the Ortizes have to any extent received a double recovery." *Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d at 343, 344.

■ In this case, as we have noted, the question before us is the effect of Article 8307, section 6a establishing a statutory right of subrogation in workers' compensation cases. *American* and *Ortiz* are distinguishable because that question was not before either court. With the existence of a statutory right, there is no need for courts to recognize a separate, equitable right of subrogation. For example, in *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108 (Tex.1985), our supreme court noted and cited with approval cases holding that a workers' compensation carrier's subrogation rights arise solely from the statute. That rationale, in part at least, springs from *Fidelity Union v. Texas Power*, 35 S.W.2d 782 (Tex.Civ.App.—Dallas 1931, writ ref'd), in which the court observed that prior to section 6a, our courts had held that a workers' compensation carrier had no equitable right of subrogation. *Id.* at 783. *See also Evans v. Venglar*, 429 S.W.2d 673, 675 (Tex.Civ.App.—Corpus Christi 1968, no writ). Because these authorities are relevant and dispositive of the point, we overrule Employers' third point.

■ In its first point, Employers argues the trial court erred in granting summary judgment in favor of Dyess and Northbrook on its statutory subrogation claims. In responding to this argument, Northbrook acknowledges Employers' general right of statutory subrogation but posits that 1) the right of subrogation only applies to third party tortfeasors, not to one whose potential liability is only contractual, and 2) even if Employers' subrogation rights extended to it, North-

brook could have no liability to Employers under the terms of the insurance contract.

As noted above, section 6a provides a compensation carrier subrogation rights against "some person other than the subscriber" who has a "legal liability" for the injury. In support of its first proposition, Northbrook argues the phrase "some person" in the statute applies only to third party tortfeasors. Because resolution of this argument requires that we determine the meaning of statutory language, we must apply the standards applicable to statutory construction.

Section 311.023 of the Government Code provides that in construing a statute, a court may, but is not required to, consider several factors including 1) the object sought to be obtained; 2) circumstances under which the statute was enacted; 3) legislative history; 4) common law or previous statutes; and 5) consequences of particular construction. Tex. Govt.Code Ann. § 311.023 (Vernon 1988). However, when the statutory language is clear and unambiguous, such extrinsic aids and rules of statutory construction are unnecessary and the statute should be given its plain meaning. *Clark v. Texas Home Health Inc.*, 940 S.W.2d 835, 841 (Tex. App.—Amarillo 1997, writ granted); *City of Dallas v. Cornerstone Bank*, 879 S.W.2d 264, 270 (Tex.App.—Dallas 1994, no writ). Here, neither party argues that the language is ambiguous and we find no ambiguity in the statute. The statute does not limit the scope of persons with legal liability for the injury against whom a compensation carriers' subrogation interest is effective. That being true, the clear wording of the statute does not support Northbrook's position that Employers is only subrogated to Dyess's rights against third party tortfeasors.

Even so, Northbrook cites and primarily relies upon *Bogart v. Twin City Fire Ins. Co.*, 473 F.2d at 619 as definitive authority for its proposition that Employers' subrogation rights are limited to third party tortfeasors. In that case, an employee was covered by workers' compensation insurance as well as uninsured motorist insurance he purchased on his own automobile. While traveling in his car, and in the scope of his employment, he was killed by an uninsured driver.

The compensation carrier paid $16,150.30 in benefits to the Bogarts and they subsequently brought suit against Twin City to recover under the uninsured motorist coverage issued by it. The compensation carrier intervened in the suit seeking subrogation rights because of its compensation payments. *Id.* at 627. Because of a provision in the Twin City policy that uninsured motorist benefits could not inure to the benefits of any workers' compensation carrier, the trial court denied Twin City's intervention. In doing so, it reasoned the subrogation statute only applied to third party tortfeasors. *Id.*

In affirming the trial court's judgment, the appellate court wrote: "Under this section the right [of subrogation] has been recognized only in actions involving tort-feasors." *Id.* at 628. The court then goes on to say, "[t]his limitation of the section (6a) to actions against the actual tort-feasor has been followed by other Texas courts." It then cites several Texas cases which it says establish such a limitation. However, while each of the Texas cases which the *Bogart* court cites in reaching that conclusion do involve subrogation claims by workers' compensation carriers against third party tortfeasors and recognize that right, in none of them was the question actually presented as to whether that right of subrogation was *limited* to third party tortfeasors.[3] Consequently, we do not believe the typical references in those cases to third party tortfeasors amount to holdings that workers' compensation subrogation actions are limited to such parties.[4] Northbrook additionally cites *Watson*, 505 S.W.2d at 795, and *Tolar v. Caterpillar Tractor Co.*, 793 F.2d 654 (5th Cir.1986) in support of its contention. Again, *Watson, Tolar*, as well as other cases not cited by Northbrook, use the third party tortfeasors language phrase without any discussion of subrogation rights

against third parties whose liability is contractual or vicarious.

In sum, Employers has not cited, and our research has failed to disclose, any Texas case expressly holding that the only third parties against whom a compensation carriers' subrogation rights are effective are tortfeasors. Because we find it in conflict with the plain language of the statute, we decline to follow the holding in *Bogart.*

■ Both parties have cited numerous opinions from courts of other jurisdictions in support of their respective positions. However, because the issue before us turns on the construction of a Texas statute, the decisions of courts of other states applying different statutes are not relevant to resolution of that question. Parenthetically, many of the cases cited by appellees, including *Bogart,* cited the absence of a double recovery as a factor supporting their decision. Here, in contrast, the evidence shows Dyess has received a double recovery. Avoidance of double recoveries is one of the purposes for which the subrogation statute was created. *Capitol Aggregates, Inc.*, 408 S.W.2d at 924; *Hartford Cas. Ins. Co. v. Albertsons Grocery Stores*, 931 S.W.2d 729, 734 (Tex.App.—Fort Worth 1996, no writ).

■ Northbrook additionally argues that, even if Employers' statutory subrogation rights extend to non-tortfeasors, as to Employers, Northbrook has no liability. This is so, it urges, because of a clause in the policy providing that coverage under the policy "shall not apply directly or indirectly to benefit [ ] any insurer or self-insurer under any workers' compensation, disability benefits or similar law." Employers responds that this provision is void as contrary to the subrogation statute and public policy.

---

3. The case most factually similar to the one before us is *Foster v. Truck Ins. Exchange,* 933 S.W.2d 207 (Tex.App.—Dallas 1996, writ denied). However the compensation carrier's rights of subrogation against the employer-purchased underinsured motorist coverage was not at issue there.

4. Those cases are: *Fort Worth Lloyds,* 246 S.W.2d at 868 (compensation carrier intervened in suit by employee against tortfeasor); *Traders*

*& General Ins. Co.,* 165 S.W.2d at 714 (compensation carrier intervened in suit by employee against tortfeasor); *Evans* (employee's failure to assert mandatory counterclaim against asserted third party tortfeasor barred employee and compensation carrier from bringing separate action); *Yeary* (after carrier brought action against tortfeasor, employee was substituted as plaintiff. Carrier then asserted subrogation rights to portion of employee's judgment against tortfeasor).

In *American Liberty Insurance Company v. Ranzau,* 481 S.W.2d 793 (Tex.1972), our supreme court examined the validity of an insurance policy clause that limited uninsured/underinsured motorist coverage based on the applicability of other insurance. The court held the "other insurance" clause invalid because it conflicted with Article 5.06–1 of the Insurance Code prescribing the minimum uninsured/underinsured motorist coverage for policies issued in this state. In reaching its conclusion, the court held that it was irrelevant that the policy form was promulgated by the State Board of Insurance "because the board may not act contrary to but only consistent with" the statute. *Id.* at 796–97. The court has reaffirmed this holding on more than one occasion. *See also Stracener v. United Services Automobile Assoc.,* 777 S.W.2d 378 (Tex.1989); *Westchester Fire Insurance Company v. Tucker,* 512 S.W.2d 679 (Tex.1974).

At least two cases have applied *Ranzau* to invalidate clauses designed to reduce coverage based on receipt of workers' compensation benefits. *Hamaker v. American States Ins. Co.,* 493 S.W.2d 893, 898 (Tex.Civ.App.— Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Fidelity & Casualty Company of New York v. McMahon,* 487 S.W.2d 371 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.). McMahon had received $3,930 in workers' compensation benefits for injuries arising out of an automobile accident caused by an uninsured driver. He then obtained a judgment for $1,500 and sought to recover under the uninsured motorist coverage applicable to the vehicle he was driving. The policy contained a provision reducing coverage under the policy by any workers' compensation benefits. *Id.* at 371. Although the form containing this limitation was promulgated by the State Board of Insurance, the court refused to give effect to the provision, noting the holding in *Ranzau* and commenting that "[t]he language and logic of this decision *(Ranzau)* clearly seem determinative of the question here presented." *Id.* at 372.

In *Huse v. Fidelity Interstate Life Ins. Co.,* 605 S.W.2d 351, 352 (Tex.Civ.App.— Eastland 1980, no writ), the court was presented with a challenge to a clause in a life insurance policy excluding coverage for "injury for which compensation is payable under any Workmen's Compensation Law." *Id.* at 352, fn. 1. The court upheld the provision and distinguished the *Ranzau* line of cases with the comment that "[i] n this case, there is no statute prohibiting the exclusion, and the parties are free to contract for an accidental injury policy which excludes coverage for accidents, fatal or nonfatal, caused by an injury for which worker's compensation benefits are payable." *Id.* at 352. The issue of breadth of the workers' compensation carrier's right of subrogation was not presented nor addressed in that case. *Huse* is also distinguishable on the ground that the challenged clause was in a life insurance policy and did not involve statutory subrogation rights.

■ The parties do not argue that the clause at issue reduced the coverage afforded to Dyess. Consequently, it does not violate article 5.06–1 of the Insurance Code as did the provision in the *Ranzau* line of cases. Even so, because Northbrook was liable within the meaning of section 6a, the clause had the effect of limiting Employers' right of subrogation established by that statute. As a result, the clause is an attempt to contractually abrogate a statutory right. Although Employers could waive its statutory right by contract, with an exception not applicable here, it is not bound by the contracts of others. *Standard Oil Co. of Tex. v. Donald,* 321 S.W.2d 602, 606 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.). Because it conflicts with Employers' statutory right of subrogation, the clause is invalid.

■ Finding that Employers' right of subrogation can apply to any parties liable for Dyess's injury, regardless of whether that liability arose in tort or contract, and further finding the clause in Northbrook's uninsured motorist policy ineffective to bar Employers' recovery, we sustain Employers' first point of error. We therefore reverse the summary judgments granted in favor of Northbrook and Dyess denying Employers' rights of subrogation.

■ Employers' second point assigns error to the trial court's orders as violative of its contractual right of subrogation. Our disposition of its first point obviates the ne-

cessity to address this point. It is worth noting, however, that just as Employers' rights cannot be altered by the contract between Winn–Lange and Northbrook, Northbrook is not bound by any contractual right of subrogation created between Employers, Winn–Lange, and Dyess.

By its fourth point, Employers assigns error to the trial court's failure to provide for its subrogation rights in the final judgment granting Dyess's recovery against Mendoza. The court's judgment reflects the existence of a stipulation of the amount of Employers' "workers' compensation lien." Dyess presents no response to Employers' fourth point. We find the supreme court's discussion in *Capitol Aggregates* dispositive of this point. There the court wrote:

> Under the terms of this statute, the compensation carrier is entitled to the first money paid to or recovered by the employee [ ] by reason of the asserted liability of a third person for his injuries, and the employee or his representatives have no right to any of such funds until the carrier is paid in full. *See Fort Worth Lloyds v. Haygood*, 151 Tex. 149, 246 S.W.2d 865; *Traders & General Ins. Co. v. West Texas Utilities Co.*, 140 Tex. 57, 165 S.W.2d 713.

*Capitol Aggregates, Inc.*, 408 S.W.2d at 923. In conformity with our disposition of Employers' first point and the quoted portion of *Capitol Aggregates*, we sustain Employers' fourth point.

In its fifth and final point, Employers challenges the trial court's failure to award costs against Mendoza and failed to state on the record good cause for not so awarding costs. However, our disposition of Employers' first and fourth points requires reversal of the trial court's judgment and remand of this cause to that court for further proceedings. Because remand is required, resolution of Employers' fifth point is not necessary to disposition of this appeal.

For the reasons discussed above, the judgment of the trial court is reversed and the cause remanded to that court for further proceedings consistent with this opinion.