**LIBERTY MUTUAL, Appellant,**

v.

**Michael KINSER, Appellee.**

No. 04–01–00507–CV.

Court of Appeals of Texas,
San Antonio.

April 10, 2002.

Clifford A. Lawrence, Jr., James E. Simmons, Simmons & Lawrence, P.C., Houston, for Appellant.

Katherine M. Willis, Robert A. Allen, Allen, Stein & Durbin, P.C., Richard E. Price, Frank R. Rivas & Associations, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice and SANDEE BRYAN MARION, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

The issue presented in this appeal is whether a workers' compensation carrier, who has paid benefits to an employee for injuries suffered in an automobile accident, has a subrogation right to benefits paid the employee under the employee's personal uninsured/underinsured insurance coverage. Because we agree with the trial court that the workers' compensation carrier does not have a subrogation right to such benefits, we affirm the trial court's judgment.

## BACKGROUND

In September of 1999, Michael Kinser ("Kinser") was injured in an automobile accident while in the course and scope of his employment for Southwestern Bell Telephone Company ("Southwestern Bell"). Southwestern Bell's workers' compensation carrier, Liberty Mutual, began paying Kinser's medical bills.

The driver of the other vehicle involved in the accident was at fault, and his insurance carrier, Farmers, issued a check for its policy limits of $25,000 jointly payable to Kinser and Liberty Mutual. Kinser endorsed the check over to Liberty Mutual.

Kinser had personal uninsured/underinsured motorist ("UIM") coverage through State Farm Mutual Automobile Insurance Company ("State Farm") with policy limits of $50,000. Kinser and Liberty Mutual disagreed regarding whether Liberty Mutual had a subrogation right to the UIM benefits. By on or about September 25, 2000, Liberty Mutual had paid Kinser $36,067.57 in workers' compensation benefits. Because Liberty Mutual had received $25,000 from Farmers, Liberty Mutual's outstanding lien was $11,067.57.

In view of the rival claims, State Farm interpled $11,067.57 into the court's registry and paid the balance of its policy limits, $38,932.43, to Kinser. Kinser filed an answer and a cross-claim against Liberty Mutual, asserting that the UIM benefits were the sole property of Kinser. Liberty Mutual also filed an answer and a cross-claim against Kinser, asserting that Liber-

ty Mutual was solely entitled to the UIM benefits paid into the registry and that State Farm and Kinser had converted the UIM benefits that State Farm paid directly to Kinser.

State Farm's motion for discharge was granted as to the funds interpled into the court's registry, and the conversion claim against State Farm was abated pending the resolution of the claims between Liberty Mutual and Kinser. . Kinser filed a motion for summary judgment, contending Liberty Mutual had no rights to the UIM benefits interpled into the registry and that Kinser was not liable for conversion because Liberty Mutual did not have a right or ownership interest in the UIM benefits paid to Kinser. Liberty Mutual also moved for partial summary judgment, attaching evidence that Liberty Mutual had paid $49,469.57 in workers' compensation benefits. After crediting the $25,000 received from Farmers, Liberty Mutual had an outstanding lien of $24,469.57. Liberty Mutual's motion only addressed the right to the UIM benefits interpled into the court's registry and did not address Liberty Mutual's conversion claim.

The trial court granted Kinser's motion and denied Liberty Mutual's motion. The trial court ordered that Liberty Mutual take nothing from Kinser and ordered that the funds interpled into the court's registry be paid to Kinser. The trial court then severed the claims between Liberty Mutual and Kinser from the claims pending against State Farm, making the judgment final for purposes of appeal. Liberty Mutual timely filed this appeal.

## STANDARD OF REVIEW

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Randall's*

*Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Where both parties move for summary judgment, we review the summary judgment evidence presented by both sides. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). When the trial court grants one party's motion and denies the other's, the non-prevailing party can appeal both the summary judgment rendered against it, and the denial of its own motion. *Holmes v. Morales,* 924 S.W.2d 920, 922 (Tex.1996). The court of appeals may affirm the trial court's summary judgment or reverse and render judgment on the non-prevailing party's motion. *Id.*

## TEXAS LABOR CODE SECTION 417.001

Section 417.001 of the Texas Labor Code, which governs a workers' compensation carrier's subrogation rights, provides in pertinent part as follows:

(a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary.

TEX. LAB.CODE ANN. § 417.001 (Vernon Supp.2001).

The Texas Labor Code was enacted as part of the state's continuing statutory revision program and was intended as a recodification only. *See* TEX. LAB.CODE ANN. § 1.001 (Vernon 1996); Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 6, 1993 Tex. Gen. Laws 1273. No substantive change in the law was intended by the

recodification. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 6, 1993 Tex. Gen. Laws 1273. Prior to the recodification, the subrogation rights of a workers' compensation carrier were governed by section 8303–4.05 of the Texas Revised Civil Statutes, which provided in pertinent part:

SECTION 4.05. THIRD PARTY LIABILITY. (a) If a third party is or becomes liable to pay damages for an injury or death which is compensable under this Act, the employee or legal beneficiary may seek damages from the third party. An employee or legal beneficiary who seeks damages from a third party remains entitled to pursue a claim for workers' compensation benefits under this Act.

(b) If compensation is claimed under this Act by the injured employee or the employee's legal beneficiaries, the insurance carrier is subrogated to the rights of the injured employee and may enforce in the name of the injured employee or the legal beneficiaries the liability of that other person.

Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 4.05, 1989 Tex. Gen. Laws 33, *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 1273.

## CASES INTERPRETING TEXAS LAW

### A. *Bogart v. Twin City Fire Ins. Co.*

In *Bogart v. Twin City Fire Ins. Co.*, the Fifth Circuit considered a workers' compensation carrier's subrogation rights with respect to UIM benefits under Texas law. 473 F.2d 619 (5th Cir.1973). In that case, the workers' compensation carrier, TransAmerica Insurance Company, argued that it had subrogation rights to the UIM benefits based on the subrogation statute "which in essence provide[d] that a workmen's compensation carrier has a right of subrogation in any recovery the employee may obtain against the third person who, because of the circumstances under which the accident occurred, has a legal liability to pay damages." 473 F.2d at 627. The district court rejected TransAmerica's argument relying on a clause in the UIM policy stating that "nothing should inure to the benefit of any workmen's compensation carrier" and on the court's conclusion that the right of subrogation existed only against a third party who was a tortfeasor. *Id.* at 627–28.

The Fifth Circuit noted that TransAmerica's argument hinged on two word choices in the statute. *Id.* at 628. TransAmerica argued that "the reference to a person with a 'legal liability' implie[d] a class larger than the tortfeasors themselves and include[d] uninsured motorist insurance carriers ... [bolstered by] the use of the word 'damages' which it asserted to be that which is paid by a carrier like [the UIM carrier] when an insured makes a claim after an accident caused by a negligent uninsured motorist." *Id.* The Fifth Circuit rejected TransAmerica's argument, noting that although TransAmerica's statutory construction superficially supported its position, "a reading of the statute as a whole and the applicable Texas law convinces us that the argument is not persuasive." *Id.* The Fifth Circuit cited a number of Texas cases which the Fifth Circuit construed as limiting the subrogation provision to actions against the actual tortfeasor. *Id.* at 628–29. The Fifth Circuit also discounted TransAmerica's fear of a double recovery because (1) the double recovery that the subrogation statute sought to prohibit was recovery from both the workers' compensation carrier and the tortfeasor; and (2) the plaintiffs had suffered damages in excess of the sum of the compensation benefits and the uninsured policy benefits. *Id.* at 629.

## B. *Employers Cas. Co. v. Dyess*

In *Employers Cas. Co. v. Dyess*, the Amarillo court rejected the Fifth Circuit's decision. 957 S.W.2d 884, 890 (Tex.App.-Amarillo 1997, pet. denied). The Amarillo court noted that the subrogation statute provided a compensation carrier subrogation rights against "some person other than the subscriber" who has a "legal liability" for the injury. *Id.* at 889. After examining the statutory language, the Amarillo court concluded that "the clear wording of the statute" did not support the UIM carrier's position that the workers' compensation carrier is only subrogated to the claimant's rights against third party tortfeasors. *Id.* In examining the Fifth Circuit's decision in *Bogart*, the Amarillo court noted that although the *Bogart* court cited several cases to support its conclusion that the carrier's subrogation rights were limited to actual tort-tortfeasors, the cited cases did not involve a question as to whether the rights were limited to actual tort-tortfeasors but rather considered whether the subrogation rights extended to the actual tort-tortfeasors. *Id.* at 890. The Amarillo court also acknowledged that the parties had cited cases from other jurisdictions in support of their position; however, the Amarillo court concluded that "because the issue before us turns on the construction of a Texas statute, the decisions of courts of other states applying different statutes are not relevant to the resolution of that question." *Id.* Parenthetically, the Amarillo court noted that although a double recovery possibility was not present in *Bogart*, it was present in the case before the court. *Id.* The Amarillo court then concluded that the policy provision providing that the policy shall not inure to the benefit of a workers' compensation carrier was invalid because it conflicted with the carrier's statutory right. *Id.* at 891. The Amarillo court held that the statutory right of subrogation applies to any parties liable for a claimant's injuries, regardless of whether that liability arose in tort or contract, and any contractual provision conflicting with that statutory right was invalid. *Id.*

## C. *Texas Workers' Comp. Ins. Facility v. Aetna Cas. & Sur. Co.*

The Houston [1st] court followed the Amarillo court's decision in *Texas Workers' Comp. Ins. Facility v. Aetna Cas. & Sur. Co.*, 994 S.W.2d 923 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The Houston court noted that the subrogation statute did not expressly limit the workers' compensation carrier's right to claims against third party tortfeasors although "[c]learly it would have been easy to do so." *Id.* at 925. The Houston court also reasoned,

> The purpose of the subrogation statute favors reading 'third party' expansively. Section 417.001 was adopted to prevent over compensation to the employee and to reduce the burden of insurance to the employer and the public. Those purposes would be frustrated if, as here, the employee were permitted to retain both the compensation benefits and settlement proceeds based on the liability of the third party tortfeasor.

*Id.* at 926 (citations omitted).

## D. *Texas Workers' Comp. Ins. Fund v. Knight*

The Amarillo court revisited its *Dyess* decision in *Texas Workers' Comp. Ins. Fund v. Knight*, 61 S.W.3d 91 (Tex.App.-Amarillo 2001, no pet.). The Amarillo court rejected the claimant's contention that its decision was contrary to the holding in *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325 (Tex.1984), noting "*Hermann Hospital* is quite inapposite, however. This is so for the simple reason that the statute applicable in *Hermann* expressly prohibited the hospital from

claiming a lien on proceeds from any insurance policy issued in favor of the injured party, including an uninsured motorist policy. No such statutory prohibition limits the subrogation rights of the Fund *viz-a-viz* the uninsured policy at bar." *Knight*, 61 S.W.3d at 93. The Amarillo court further rejected the trial court's authority to invoke its equitable rights to deny the subrogation because the statute expressly requires that the workers' compensation carrier be paid from the first funds; therefore, the claimant has no right to any funds until the carrier receives its payment in full. *Id.*

### OTHER JURISDICTIONS' INTERPRETATION OF CARRIER'S SUBROGATION RIGHTS

Most jurisdictions resolve the issue of whether a workers' compensation carrier's subrogation rights extend to UIM benefits against the carrier. *See* LEE R. RUSS & THOMAS F. SEGALLA, 16 COUCH ON INSURANCE § 225.198 (3d ed.2000); Jeffrey L. Cole, J.D., Annotation, *Right of Employer or Workers' Compensation Carrier to Lien Against, or Reimbursement Out of, Uninsured or Underinsured Motorist Proceeds Payable to Employee Injured by Third Party*, 33 A.L.R.5th 587, 1995 WL 900189 (1995). In *Dyess*, the Amarillo court refused to consider opinions from other jurisdictions in resolving the subrogation rights issue because the issue "turn[ed] on the construction of a Texas statute." *Dyess*, 957 S.W.2d at 890. However, in many instances the statutes considered by these other jurisdictions are similar to the Texas statute. Therefore, the cases from these other jurisdictions are instructive and illustrate a national trend in interpreting this type of statutory language. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 353 (Tex.1990)(noting construction of statutes by other jurisdictions with similar or identical language in analyzing proper interpretation of Texas statute).

In most jurisdictions, the subrogation statutes include some version of the following two provisions: (1) the first provision states that an injured employee may pursue an action for damages against the person or party who has a legal liability for the damages; and (2) the second provision states that the workers' compensation carrier either: (a) is subrogated to or has a lien against any recovery in such an action; (b) is entitled to a credit for the amount of such recovery; or (c) may pursue the claim against that person or party. *See, e.g., Silvera v. Employers Ins. Co. of Nevada*, 40 P.3d 429 (Nev.2002) (employee may recover damages from person with a legal liability and insurer can bring action against the person so liable to pay damages and is subrogated to rights of injured employee to recovery); *Jeneary v. Commonwealth*, 262 Va. 418, 551 S.E.2d 321 (2001) (Fund subrogated to any right to recover damages which injured employee has against any other party for such injury); *American Red Cross v. Workers' Comp. Appeal Bd.*, 745 A.2d 78 (Pa. Commw.Ct.2000) (employer subrogated to right of employee against third party where employee's compensable injury is caused by act or omission of a third party), *aff'd*, 564 Pa. 192, 766 A.2d 328 (2001); *Stewart v. Auto–Owners Ins. Co.*, 230 Ga. App. 265, 495 S.E.2d 882 (1998) (injured employee may pursue remedy against person legally liable for injury and employer or employer's insurer has subrogation lien against such recovery); *River Gas Corp. v. Sutton*, 701 So.2d 35 (Ala.Civ.App.1997) (employee may bring action against any party other than employer who has legal liability for damages and amount of damages recovered and collected are credited against employer's liability for compensation); *Dodd v. Middlesex Mut. Assur. Co.*, 242 Conn. 375, 698 A.2d 859 (1997) (either employee or employer may proceed at law

against third person with legal liability to pay damages for injury and damages are apportioned to give precedence to claim of employer); *Terry v. State Farm Mut. Automobile Ins. Co.*, 287 Ill.App.3d 8, 222 Ill.Dec. 485, 677 N.E.2d 1019 (1997) (employer entitled to receive compensation paid from amount employee receives from person who has legal liability to pay damages); *Yaakub v. Aetna Cas. & Sur. Co.*, 882 S.W.2d 743 (Mo.Ct.App.1994) (employer subrogated to rights of employee against third person liable for injury); *March v. Pekin Ins. Co.*, 465 N.W.2d 852, 853–54 (Iowa 1991) (employee may maintain action against third party who has legal liability to pay damages and employer or employer's insurer is indemnified out of recovery of damages); *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So.2d 879 (Miss.1989) (employer or compensation insurer has right to maintain action against any other party responsible for injury to employee and may retain any amount recovered up to the amount paid in compensation); *State Comp. Ins. Fund v. Gulf Ins. Co.*, 628 P.2d 182, 183 (Colo.Ct.App. 1981) (cause of action against third party whose negligence injured employee assigned to Fund); *Janzen v. Land O'Lakes, Inc.*, 278 N.W.2d 67 (Minn.1979) (employee may take legal proceedings against party with legal liability to recover damages and employer may deduct amount of judgment obtained and paid or settlement made from amount received by employee); *Allied Mut. Ins. Co. v. Larriva*, 19 Ariz.App. 385, 507 P.2d 997, 998–99 (1973) (employee may pursue remedy against person whose negligence or wrong caused injury and carrier is entitled to lien on amount collected from such other person); *Fireman's Fund Indemnity Co. v. Industrial Action Comm'in*, 226 Cal.App.2d 676, 38 Cal.Rptr. 336, 337 (1964) (employer entitled to credit for any recovery by employee for his injury). In rejecting the argument that a workers' compensation carrier has a subrogation right to UIM benefits, the various states have relied on different characteristics of UIM coverage to hold that the carrier is not subrogated to the claimant's rights to collect from an UIM carrier, primarily: "(1) the fact that the obligation of the UIM insurer is based on a contract rather than a tort, (2) the fact that the UIM insurer did not in any sense 'cause' the injuries, and (3) the fact that a UIM insurer is not a 'third party' in the usual sense of that term." *See* Lee R. Russ & Thomas F. Segalla, 16 Couch on Insurance § 225.198 (3d ed.2000). Finally, some courts have relied on fact that the workers' compensation claimant himself or herself paid for the benefits of the UIM policy as justification for denying the carrier a subrogation right to the UIM proceeds *Id.* Interestingly, in several states in which the courts have held that the carrier does not have a subrogation right to UIM proceeds under the general subrogation provision, the legislature has amended the statute to permit subrogation against UIM proceeds from a policy where the employer paid the premiums but not where the employee paid the premiums. *See Silvera v. Employers Ins. Co. of Nevada*, 40 P.3d at 431; *Chavez v. S.E.D. Laboratories*, 129 N.M. 794, 14 P.3d 532, 535 (2000); *Department of Labor & Indus. v. Cobb*, 59 Wash. App. 360, 797 P.2d 536, 538 (1990).

## ANALYSIS

■ Section 417.001(b) of the Texas Labor Code defines a workers' compensation carrier's subrogation rights. Tex. Lab. Code Ann. § 417.001(b) (Vernon Supp. 2001). Under that provision, the carrier is entitled to enforce the liability of "the third party" in the name of the injured employee and is subrogated to the injured employee's rights. *Id.* The reference to "the third party" in section 417.001(b) nec-

essarily refers to the third party referenced in section 417.001(a). The fact that section 417.001(b) refers back to the "third party" in section 417.001(a) is clearer in the statutory language that existed prior to the recodification in which section 4.05(b) refers to the liability of "that other person," since the phrase "that other person" could only refer back to the person mentioned in section 4.05(a). Act of December 11, 1989, 71st Leg., 2nd C.S., ch. 1, § 4.05, 1989 Tex. Gen. Laws 33, *repealed by* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 1273.

Although the term "third party" when read in isolation is not limited to tortfeasors, the term "third party" must be read in context. Section 417.001(a) modifies or limits the "third party" to a "third party who is or becomes liable to pay damages." Therefore, a carrier is only entitled to subrogation against damages paid to an injured employee by a third party who is or becomes liable to pay damages.

Kinser contends that the subrogation provision is not applicable because State Farm was liable for contractual benefits not damages. The Houston [1st] court dismissed this argument by stating that a UIM carrier is statutorily obligated to provide for the payment of sums the insured is legally entitled to recover as damages. *Texas Workers' Compensation Ins. Facility v. Aetna Cas. & Surety Co.*, 994 S.W.2d at 926. Kinser's policy states that State Farm will pay damages that a covered person is legally entitled to recover. However, Kinser maintains that this contractual right to receive benefits is distinguishable from the right to recover damages. ▮▮ "Actual damages are those that are recoverable at common law." *Farrell v. Hunt*, 714 S.W.2d 298, 300 (Tex.1986). "An award of damages is defined as the sum of money the law awards as pecuniary compensation, recompense, or satisfaction

for an injury done or a wrong sustained as a consequence of a breach of a contractual obligation or a tortious act." *City of Dallas v. Cox*, 793 S.W.2d 701, 733 (Tex.App.-Dallas 1990, no writ). In *Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 654 (Tex.2000), the Texas Supreme Court appeared to recognize a difference between damages awarded by a jury and benefits payable under a UIM policy. We agree with Kinser that the term "damages" as used in section 417.001(a) does not include UIM benefits but is limited to damages recovered from a third party who is liable to the injured employee because the third party breached a contract or committed a tortious act against the injured employee. Therefore, we hold that Liberty Mutual does not have a subrogation right to benefits paid to Kinser by State Farm under Kinser's UIM coverage—a holding that is consistent with the view of a majority of other jurisdictions.

We also note that the decisions by the Amarillo court and the Houston court contain one distinguishing factor. In each of those decisions, the UIM policies were acquired and maintained by the claimant's employer, not by the claimant. In *Bogart* and in the present case, the policies were acquired and maintained by the claimant, meaning the claimant paid the premiums. As a result, we have two competing public policies. The policy behind the subrogation statute, which is to prevent over compensation to the employee and to reduce the burden of insurance to the employer and to the public, *Texas Workers' Comp. Ins. Facility v. Aetna Cas. & Sur. Co.*, 994 S.W.2d at 926, and the policy of requiring uninsured motorist coverage "to protect the conscientious and thoughtful motorist against losses caused by negligent financially irresponsible motorists." *Francis v. Int'l Serv. Ins. Co.*, 546 S.W.2d 57, 60–61

(Tex.1976). In the absence of proof that Kinser's retention of the UIM benefits would overcompensate him, it is difficult to understand why the policy favoring his prudence should be trumped by the policy supporting the subrogation statute.[1] Any other interpretation simply results in the injured employee subsidizing the insurance company. Neither law nor equity would be satisfied by that result.

### CONVERSION

 Conversion is established by proving: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property. *Ojeda v. Wal–Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex.App.-San Antonio 1997, pet. denied). An employee who is wrongfully paid money that belongs to a workers' compensation carrier is liable for conversion. *Autry v. Dearman*, 933 S.W.2d 182, 189 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 659 (Tex.App.-Dallas 1993, writ denied). Because we have concluded that Liberty Mutual did not have a subrogation right to the UIM benefits, Kinser cannot be liable for conversion.

### CONCLUSION

A workers' compensation carrier does not have a subrogation right to benefits paid an injured employee under the employee's UIM coverage. Because no subrogation right exists, an employee who retains UIM benefits is not liable for conversion. The trial court's judgment is affirmed.

---

**1.** We note with interest that the El Paso court concluded that a workers' compensation carrier does not have a subrogation right to an injured employee's personal UIM benefits in *Casualty Reciprocal Exchange v. Demock*, No. 08–00–00206–CV, 2002 WL 244821 (Tex. App.-El Paso Feb.21, 2002, no pet. h.) (not designated for publication); however, we do not rely on the El Paso court's decision as authority. *See* TEX.R.APP. P. 47.4.