# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-08-00481-CV
---

**Resolution Oversight Corporation as Special Receiver of Financial Insurance Company of America, Appellant**

**v.**

**Arturo Garza, Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-08-002508, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**
---

### M E M O R A N D U M   O P I N I O N

Appellant Resolution Oversight Corporation ("Resolution"), as Special Receiver of Financial Insurance Company of America ("FIC") sought to enforce subrogation rights against funds paid by Home State County Mutual Insurance Company ("Home State") to appellee Arturo Garza. *See* Tex. Lab. Code Ann. § 417.001 (West 2006) (establishing subrogation rights for workers' compensation insurance carriers). The parties filed cross-motions for summary judgment, and the trial court granted Garza's motion and denied Resolution's. Resolution appeals, arguing that the trial court erred in granting summary judgment in favor of Garza. Because we hold that FIC has a valid subrogation lien against the funds Home State paid to Garza, we reverse the trial court's grant of summary judgment in favor of Garza, grant summary judgment in favor of Resolution as to the issue of FIC's subrogation rights, and remand the cause to the trial court for a determination of Garza's reasonable attorney's fees.

**BACKGROUND**

In December 2004, Garza was injured in an automobile accident while operating a tow truck owned by Texas Towing Corporation. Garza had parked the truck on the shoulder of the road and was exiting the truck when he was struck by a vehicle driven by an uninsured driver. Garza sued the uninsured driver and Home State, Texas Towing's uninsured/underinsured motorist ("UIM") carrier. Home State eventually settled the suit and tendered its policy limit of $504,000.[1]

At the time of the accident, Garza was employed by Service Professionals of Texas, Inc. ("Serv Pro"), a staff-leasing company that had assigned Garza to Texas Towing.[2] Serv Pro's workers' compensation carrier, FIC, provided medical and temporary income benefits to Garza totaling $145,703.85. Resolution, on behalf of FIC, sought reimbursement for the full amount of benefits FIC paid to Garza out of the UIM benefits, citing to the subrogation provisions of the Texas Worker's Compensation Act.[3] *See* Tex. Lab. Code Ann. § 417.001.

Garza filed a motion for summary judgment, arguing that FIC's subrogation right does not extend to the UIM benefits at issue. In the alternative, Garza argued that, even if FIC did have a valid subrogation interest in the benefits, it could not exercise its subrogation rights because

---

[1] *See Garza v. Home State County Mut. Ins. Co.*, No. 2005-CI-13024 (37th Dist. Ct., Bexar County, Tex.). Because of the dispute at issue here, Home State paid $150,000 into the registry of the Bexar County district court, and the balance was paid to Garza.

[2] The parties dispute whether Garza was also an employee of Texas Towing.

[3] Resolution sought to enforce FIC's subrogation interest through the receivership proceedings, which were brought in Travis County. *See State v. Financial Ins. Co. of Am.*, No. D-1-GV-05-00846 (353rd Dist. Ct., Travis County, Tex.). After the trial court granted Garza's motion for summary judgment, Resolution filed a motion to sever the subrogation dispute, which the trial court granted.

Garza had not been made whole.  Finally, Garza argued that if FIC could exercise its subrogation rights, then FIC's share of the benefits should be reduced by one-third to cover Garza's reasonable attorney's fees.  *See* Tex. Lab. Code Ann. § 417.003 (West 2006).  Resolution also filed a motion for summary judgment, arguing that FIC has a subrogation interest in the UIM proceeds as a matter of law and that Garza had not established his entitlement to reasonable attorney's fees.  The trial court granted Garza's motion for summary judgment and denied Resolution's.

Resolution raises six issues on appeal, which can be organized into three overarching questions:  (1) whether FIC has a valid subrogation interest in the UIM benefits; if so, (2) whether Garza must be made whole before FIC can exercise its subrogation rights; and (3) whether Garza is entitled to reasonable attorney's fees out of FIC's share of the UIM benefits.[4]

---

[4] Resolution argues on appeal that the summary judgment in favor of Garza should be reversed and Resolution's motion for summary judgment should be granted, or, in the alternative, the cause should be remanded for trial because:

(1) the trial court erred in granting Garza's motion for summary judgment;

(2) FIC is entitled to recover its subrogation lien from the UIM benefits whether or not Texas Towing is Garza's employer;

(3) FIC is entitled to recover its subrogation lien from the UIM benefits because Texas Towing, which purchased the UIM policy, is Garza's employer;

(4) a fact issue exists as to whether Garza has been made whole;

(5) Garza's claim for attorney's fees is governed by the Texas Insurer Receivership Act, Tex. Ins. Code Ann. §§ 443.001-.402 (West 2009), rather than the Texas Workers' Compensation Act; and

(6) a fact issue exists as to the reasonable amount of attorney's fees and costs that should be awarded Garza.

3

**STANDARD OF REVIEW**

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues, and the trial court grants one motion and denies the other, the appellate court determines all questions presented and, if the reviewing court finds that the trial court erred, renders the judgment the trial court should have rendered. *Id.*

The questions presented on appeal turn on issues of statutory construction. Statutory construction is a legal question that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we first look to the plain language of the statute. *Tex. Health Ins. Risk Pool v. Southwest Serv. Life Ins. Co.*, 272 S.W.3d 797, 800-01 (Tex. App.—Austin 2008, no pet.); *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). We read the statute as a whole and give meaning to the language that is consistent with other provisions in the statute. *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 872-73 (Tex. 2005); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).

**DISCUSSION**

*Does FIC have a valid subrogation interest in the UIM benefits?*

Subrogation entitles one party to enforce the rights and recover the remedies of another party. *See* Black's Law Dictionary 1467 (8th ed. 2004) (defining "subrogation"). The legislature first subrogated workers' compensation insurance carriers to the rights of injured employees in 1917. Act of March 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex. Gen. Laws 268, 285.

4

Under current law, carriers have a subrogation right to enforce and recover damages that an injured employee is owed "from a third party who is or becomes liable to pay damages" for the employee's injury. *See* Tex. Lab. Code Ann. § 417.001.[5] The question presented by this case is whether Home State is "a third party who is or becomes liable to pay damages." Garza argues that the statute only applies to third-party tortfeasors who are liable for damages as a result of some wrongdoing on their part and does not apply to UIM insurers, like Home State, whose liability is grounded in contract. Resolution counters that a "third party" under the statute is any party who is liable for the employee's injury, regardless of whether that liability arose in tort or contract.

---

[5] Section 417.001 of the Texas Labor Code provides:

(a) An employee or legal beneficiary may seek damages from a third party who is or becomes liable to pay damages for an injury or death that is compensable under this subtitle and may also pursue a claim for workers' compensation benefits under this subtitle.

(b) If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary. The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or the legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code, attributable to the employer. If the recovery is for an amount greater than the amount of the insurance carrier's subrogation interest, the insurance carrier shall:

> (1) reimburse itself and pay the costs from the amounts recovered; and

> (2) pay the remainder of the amount recovered to the injured employee or legal beneficiary.

Tex. Lab. Code Ann. § 417.001(a), (b) (West 2006).

5

This question is not one of first impression. Several of our sister courts have been presented with the question of whether the subrogation rights established by section 417.001 extend to UIM benefits. These cases fall into two categories: (1) those involving employer-purchased policies; and (2) those involving employee-purchased policies.

In each case involving employer-purchased policies, the courts have held that the workers' compensation carrier has a subrogation interest in the UIM benefits. *See Erivas v. State Farm Mut. Auto. Ins. Co.*, 141 S.W.3d 671, 676 (Tex. App.—El Paso 2004, no pet.); *Texas Workers' Comp. Ins. Fund v. Knight*, 61 S.W.3d 91, 93 (Tex. App.—Amarillo 2001, no pet.); *Texas Workers' Comp. Ins. Facility v. Aetna*, 994 S.W.2d 923, 926 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Employers Cas. Co. v. Dyess*, 957 S.W.2d 884, 886 (Tex. App.—Amarillo 1997, pet. denied). These cases are based on the maxim that, when statutory language is clear and unambiguous, the statute should be given its plain meaning; because the statute refers to "third parties," not "third-party tortfeasors," and to "liability," not "tort liability," the courts reasoned that a carrier's subrogation rights are not limited to claims grounded in tort law. *See Erivas*, 141 S.W.3d at 676 ("We find that the plain meaning of Section 417.001 creates a right of subrogation against a third party who is or becomes liable to pay damages, including an employer's UIM insurance carrier found liable to pay damages."); *Aetna*, 994 S.W.2d at 925 ("The language of the subrogation statute does not expressly limit [the carrier's] rights to claims against third-party tortfeasors. Clearly, it would have been easy to do so."); *Dyess*, 957 S.W.2d at 889 ("The statute does not limit the scope of persons with legal liability for the injury against whom a compensation carriers' subrogation interest is effective. That being true, the clear wording of the statute does not support [the UIM insurer's] position that [the

6

carrier] is only subrogated to [the employee's] rights against third-party tortfeasors."); *see also National Liab. & Fire Ins. Co v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) ("If possible, we must ascertain the legislature's intent from the language it used in the statute and not look to extraneous matters for an intent that the statute does not state.").

In each case involving employee-purchased policies, however, the courts have held that the carrier does *not* have a subrogation interest in the benefits. *See City of Corpus Christi v. Gomez*, 141 S.W.3d 767, 773 (Tex. App.—Corpus Christi 2004, no pet.); *Casualty Reciprocal Exch. v. Demock*, 130 S.W.3d 74, 76 (Tex. App.—El Paso 2002, no pet.); *Liberty Mut. v. Kinser*, 82 S.W.3d 71, 78 (Tex. App.—San Antonio 2002, pet. withdrawn); *see also McLennan Cmty. Coll. v. State Farm Mut. Auto. Ins. Co.*, No. 10-02-00206-CV, 2004 Tex. App. LEXIS 2332, at *2 (Tex. App.—Waco Mar. 10, 2004, pet. denied) (mem. op.). The courts found the factual distinction between these cases and those involving employer-purchased policies significant for two reasons. First, as the *Demock* court noted, when employee-purchased plans are involved, the courts must reconcile competing public policies:

> The Legislature declared it to be the public policy of this state to make uninsured motorist coverage a part of every liability insurance policy issued, with certain limited exceptions . . . .
>
> We fail to see how Demock's prudence in maintaining UIM coverage, which insurers are statutorily required to provide for the insured's benefit and for which she has paid a premium, can be trumped by the subrogation provision. Indeed, construing the subrogation provision as if it stood alone would thwart the legislative intent and mandate that requires insurers to provide UIM motorist protection for persons such as Demock.

7

130 S.W.3d at 76 (citations omitted). Second, to allow subrogation rights against employee-purchased UIM policies would result in the injured employee subsidizing the workers' compensation carrier, a result which the courts found untenable. *See Kinser*, 82 S.W.3d at 79; *Gomez*, 141 S.W.3d at 772.

By the reasoning of both lines of cases, FIC's subrogation rights extend to the UIM policy purchased by Texas Towing. By its plain language, the statute applies to all third parties, not just tortfeasors, to all forms of liability, whether grounded in tort or contract, and to all damages, not just tort damages. *See* Tex. Lab. Code Ann. § 417.001. Home State is a third party, and the policy was purchased by Texas Towing, not by employee Garza. Home State was contractually liable for Garza's injuries and paid Garza damages—compensation for the injuries he suffered in the accident.[6] *See* Black's Law Dictionary 416 (8th ed. 2004) (defining "damages").

---

[6] Garza argues that there is a distinction between "monies paid under a contract," such as the UIM policy, and "damages." He points to *Liberty Mutual v. Kinser*, 82 S.W.3d 71 (Tex. App.—San Antonio 2002, pet. withdrawn), in which the San Antonio Court of Appeals appeared to suggest that a carrier's subrogation rights should never extend to UIM benefits—whether the policy was purchased by an employee, an employer, or someone else entirely—because the term "damages" as used in section 417.001(a) "is limited to damages recovered from a third party who is liable to the injured employee because the third party breached a contract or committed a tortious act against the injured employee." *Id.* at 78. We first note that the holding of the *Kinser* case is narrow and states only that "[a] workers' compensation carrier does not have a subrogation right to benefits paid an injured employee under the employee's UIM coverage." *Id.* at 79. Thus, any suggestion by the *Kinser* court that subrogation rights do not extend to benefits from a UIM policy purchased by someone other than the employee is mere dicta. Second, to the extent that the *Kinser* court suggests that the word "damages" is limited to money paid as a result of tortious conduct, we disagree. Black's Law Dictionary defines "damages" as "money claimed by, or ordered to be paid to, a person as compensation for loss or injury." *See* Black's Law Dictionary 416 (8th ed. 2004). This definition, and thus the plain language of the statute, clearly encompasses the funds paid to Garza by Home State—funds that were undoubtedly meant to compensate Garza for the loss and injury he suffered in the accident.

8

Garza contends that Texas Towing was not his employer, and thus this case is more akin to those involving employee-purchased plans. We disagree. Unlike with employee-purchased plans, there is no competing public policy here. Texas Towing, which paid the premiums, is provided the same protection under its UIM policy whether or not FIC is granted subrogation rights. *See Demock*, 130 S.W.3d at 76. And since Garza did not pay for the policy, the injured employee is not being asked to subsidize the workers' compensation carrier. *See Kinser*, 82 S.W.3d at 79; *Gomez*, 141 S.W.3d at 772.

For the foregoing reasons, we hold that FIC has a valid subrogation interest in the proceeds of the UIM policy purchased by Texas Towing.[7] We next consider whether Garza must be made whole before FIC can exercise its subrogation rights.

*Must Garza be made whole before FIC can exercise its subrogation rights?*

Garza argues that, even if FIC has a valid subrogation interest in the UIM benefits, the trial court properly granted his summary judgment motion because he presented sufficient summary judgment evidence to conclusively prove that he has not been made whole. Garza reasons that the purpose behind the statute is to prevent over-compensation to the employee, citing to *Kinser*, 82 S.W.3d at 78, and that therefore, for public policy reasons, FIC's subrogation rights should be denied and the UIM proceeds should be distributed solely to Garza.

---

[7] Because we hold that the legal distinction is between plans purchased by the employee, in which carriers do not have a subrogation right, and plans purchased by someone other than the employee, in which carriers do have a subrogation right, we need not address FIC's third issue on appeal, in which it argued that Texas Towing was Garza's co-employer.

9

The distribution of proceeds recovered from third parties is governed by section 417.002. *See* Tex. Lab. Code Ann. § 417.002 (West 2006). Under that provision, any money recovered goes first to the workers' compensation carrier, and "until [the] carrier is reimbursed in full, 'the employee or his representatives have no right to any of such funds.'"[8] *Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008) (quoting *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 923 (Tex. 1966)); *see also Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002) ("Thus, rather than the employee owning the money and being forced to disgorge it, the carrier is first entitled to the money up to the total amount of benefits it has paid . . . ."). After the carrier is fully reimbursed, then any additional money goes to the employee. *See* Tex. Lab. Code Ann. § 417.002(b). First-money reimbursement is crucial to the workers' compensation system because it reduces costs to the carrier, and thus to the employer and the public. *Ledbetter*,

---

[8] Section 417.002 provides:

(a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

(b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

(c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits. If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.

Tex. Lab. Code Ann. § 417.002 (West 2006).

10

251 S.W.3d at 35; *Performance Ins. Co. v. Frans*, 902 S.W.2d 582, 585 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

The statute makes no provision for an analysis of whether the employee has been made whole. *See* Tex. Lab. Code Ann. § 417.002. Once a carrier pays or agrees to pay benefits to an injured employee, "[t]he carrier's right overrides that of the employee," and courts are not allowed to use their equitable powers to circumvent the carrier's right to first-money reimbursement. *See Hartford Cas. Ins. Co. v. Albertsons Grocery Stores*, 931 S.W.2d 729, 734 (Tex. App.—Fort Worth 1996, no writ); *see also Baker*, 87 S.W.3d at 535 (Hankinson, J., dissenting) (noting that first-money reimbursement rule "exists because we have a no-fault worker[s'] compensation system. And under that no-fault system, we permit the insurer to recoup what it has paid ahead of anyone else's interest, sometimes in derogation of the employee's right to be made whole, a right that would be superior under equitable subrogation principles.");[9] *Ledbetter*, 251 S.W.3d at 36 ("There is nothing discretionary about this statute; a carrier's right to reimbursement is mandatory."); *Knight*, 61 S.W.3d at 93 (holding that "the trial court could not invoke its equitable powers and, thereby, deny the [carrier] subrogation"); *Texas Workers' Comp. Ins. Fund v. Travis*, 912 S.W.2d 895, 898-99 (Tex. App.—Fort Worth 1995, no writ) (court cannot circumvent carrier's right to subrogation by apportioning large share of settlement proceeds to non-claimant); *Frans*, 902 S.W.2d at 585 ("The trial court had no discretion to ignore the wording of the statute and apportion the settlement funds between the claimants before reimbursing the carrier.").

---

[9] The Texas Supreme Court has since discarded the superior status of equitable subrogation principles in favor of the freedom of contract. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649-50 (Tex. 2007).

Because FIC's subrogation right is not dependent on whether Garza has been made whole, we hold that the trial court erred in granting summary judgment in favor of Garza and in denying summary judgment in favor of Resolution as to the issue of FIC's subrogation rights. We turn next to the issue of Garza's claim for attorney's fees

*Is Garza entitled to attorney's fees out of FIC's share of the UIM benefits?*

In his summary judgment motion and on appeal, Garza argues that FIC's subrogation interest should be reduced by one-third to cover his reasonable attorney's fees. Under the Texas Workers' Compensation Act, when the injured employee pursues the claim against the third party and the workers' compensation carrier is not actively represented by an attorney in that proceeding, the carrier is required to pay a fee to the employee's attorney. *See* Tex. Lab. Code Ann. § 417.003(a) (West 2006).[10] If the carrier and the employee's attorney cannot agree on a fee amount, then the court deducts a reasonable fee, not to exceed one-third of the carrier's subrogation interest, from the carrier's subrogation interest. *Id.*

---

[10] Section 417.003(a) provides:

An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

> (1) a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and

> (2) a proportionate share of expenses.

Tex. Lab. Code Ann. § 417.003(a) (West 2006).

Resolution argues that Garza is not entitled to recover attorney's fees in this case because (1) Garza and his counsel contested FIC's subrogation interest, forcing Resolution to sue to recover FIC's share of the UIM proceeds; and (2) any claim for attorney's fees is governed by the Texas Insurer Receivership Act, rather than the Texas Workers' Compensation Act. We will examine each argument in turn.

Resolution first contends that attorney's fees are only required under section 417.003 "when the attorney has represented the insurance company's interests," citing to the Dallas Court of Appeals' decision in *Baker v. Argonaut Ins. Co.*, 36 S.W.3d 587, 591 (Tex. App.—Dallas 2000), *rev'd on other grounds*, 87 S.W.3d 526 (Tex. 2002). Because Garza contested FIC's right to subrogation, Resolution argues that Garza's attorney was working against FIC's interest and is therefore not entitled to attorney's fees. We disagree. *See New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 203 (Tex. App.—Dallas 1993, no writ) (rejecting similar argument); *see also Erivas*, 141 S.W.3d at 678 (granting attorney's fees where employee's attorney obtained UIM benefits, then fought against subrogation lien). The question is not whether Garza's attorney represented FIC's interest in the subrogation proceedings, but whether Garza's attorney represented FIC's interests in pursuing the claim against Home State. *Erivas*, 141 S.W.3d at 678; *New York Underwriters*, 856 S.W.2d at 203. FIC was not represented by an attorney in the settlement negotiations with Home State; instead, Garza's counsel was solely responsible for negotiating the settlement. *See* Tex. Lab. Code Ann. § 417.003(a) (mandating award of reasonable attorney's fees when carrier's "interest is not actively represented by an attorney *in a third-party action*" (emphasis added)). If Garza's attorney had not negotiated the settlement, FIC would not

13

have recovered anything from Home State, so Garza's work during the settlement negotiations clearly advanced FIC's interests. Therefore, we hold that Garza has met the statutory prerequisite and is, by law, entitled to recover reasonable attorney's fees. *See id.*; *Erivas*, 141 S.W.3d at 678; *New York Underwriters*, 856 S.W.2d at 203.

Resolution next argues that, because FIC is in receivership, Garza must follow the claims procedure laid out in the Insurer Receivership Act in order to recover the fees he is owed. *See* Tex. Ins. Code Ann. §§ 443.001-.402 (West 2009). The Insurer Receivership Act provides "a comprehensive scheme for the receivership of insurers," including a process for asserting claims against the receivership estate, in order to "protect the interests of insureds, claimants, creditors, and the public." *See id.* § 443.001. Resolution maintains that, under the Workers' Compensation Act, the carrier is first awarded an amount equal to the full costs of the benefits it provided to the injured employee. Then, the carrier is separately forced to pay a fee to the employee's attorney. Under this reasoning, when FIC is first awarded the full costs of the benefits it provided Garza, the entire amount becomes the property of the FIC receivership estate. Therefore, Resolution reasons, Garza's request for attorney's fees is a claim against the receivership estate and can only be claimed and paid in accordance with the distribution scheme established in the Insurer Receiver Act. *See id.* §§ 443.251-.261 (establishing procedure for claims against estate), .301 (establishing priority of distributions from estate).

We disagree with Resolution's characterization of its award under the Workers' Compensation Act. The portion of the UIM proceeds representing Garza's attorney's fees is not and will never be the property of the FIC receivership estate. Rather, the attorney's fees are deducted

14

from the third-party recovery before FIC is awarded anything. Section 417.002(a) provides that "[t]he net amount recovered by a claimant in a third-party action shall be used to reimburse the carrier." Tex. Lab. Code Ann. § 417.002(a). The "net amount recovered" has been interpreted to be "the third-party recovery less the employee's attorney's fees." *Texas Workers' Comp. Ins. Fund v. Alcorta*, 989 S.W.2d 849, 852 (Tex. App.—San Antonio 1999, no pet.). "That is, by statutory design, the 'first money' owed to the carrier—the net amount recovered under section 417.002(a)—is a sum which has been reduced by allowable attorney's fees under section 417.003." *Id.*; *see also Erivas*, 141 S.W.3d at 678 (applying reasoning of *Alcorta*). Because the attorney's fees are deducted first, they are never the property of the receivership estate and thus the procedures in the Insurer Receivership Act that govern claims against the receivership estate do not apply.

For the foregoing reasons, we hold that Garza is entitled to reasonable attorney's fees to be deducted from the UIM proceeds before any award is made to FIC. However, because the trial court granted Garza's motion for summary judgment and denied FIC's right to subrogation, it did not reach the question of the amount of attorney's fees owed to Garza. Therefore, we are not in a position to alter the judgment by adding attorney's fees. *See Alcorta*, 989 S.W.2d at 852 (remanding for trial court to calculate attorney's fees under section 417.003). We remand the case to the trial court for a determination of reasonable attorney's fees.

**CONCLUSION**

Because we hold that FIC has a valid subrogation lien against the funds Home State paid to Garza, we reverse the trial court's grant of summary judgment in favor of Garza, grant

15

summary judgment in favor of Resolution as to the issue of FIC's subrogation rights, and remand the cause to the trial court for a determination of Garza's reasonable attorney's fees.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Reversed and Rendered in part; Reversed and Remanded in part

Filed:  July 10, 2009

16